**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **SAAD BIN KHALID**,<br><br>            Plaintiff,<br><br>            v.<br><br>**MERRICK GARLAND,** *et al.*,<br><br>            Defendants. | Case No. 1:21-cv-02307 (CRC) |

**<u>OPINION AND ORDER</u>**

Plaintiff Saad Bin Khalid is on the U.S. government's No Fly List, which prevents him from boarding commercial flights on domestic carriers or traveling by plane through U.S. airspace.  He filed this suit against the Attorney General, the Director of the Federal Bureau of Investigation ("FBI"), the Director of the FBI's Terrorist Screening Center ("TSC"), the Secretary of the Department of Homeland Security ("DHS"), the Administrator of the Transportation Security Administration ("TSA"), and the Commissioner of Customs and Border Protection ("CBP") to challenge his inclusion on the No Fly List and in the broader Terrorist Screening Database ("TSDB"), colloquially known as the "terrorist watchlist."  Khalid claims that his placement on both lists violated his substantive and procedural due process rights, the Administrative Procedure Act, and the Religious Freedom Restoration Act.  Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks subject matter jurisdiction to alter Khalid's placement on the No Fly List and under Rule 12(b)(6) for failure to state a claim.

The Court will grant Defendants' motion in part and deny it in part.  The Court previously addressed Khalid's claims related to the No Fly List when it denied his request for a

preliminary injunction to allow him to travel from Pakistan to the United States.  Order at 1–2, Oct. 7, 2022.  As before, the Court lacks jurisdiction to "affirm, amend, modify, or set aside" the order of the TSA Administrator that placed Khalid on the No Fly List because exclusive jurisdiction to review such orders resides with the courts of appeals.  But Khalid's claims related to his placement on the broader terrorist watchlist do not suffer from the same jurisdictional infirmity.  And, as the Court reads the motion to dismiss, Defendants do not directly confront those claims.  While many of the same arguments for dismissal of Khalid's No Fly List claims may also apply to the claims related to his placement on the watchlist, the Court will deny without prejudice Defendants' motion to dismiss some of the latter claims pending further briefing.

## I.   Background[1]

### A.   Statutory Framework

The Terrorist Screening Center ("TSC") is a multi-agency entity administered by the FBI which coordinates the U.S. government's efforts to track potential terrorists.  The TSC maintains the Terrorist Screening Database ("TSDB"), commonly referred to as the terrorist watchlist. Am. Compl. ¶ 24; Decl. of Samuel P. Robinson ("Robinson Decl."), Ex. A, Overview of the U.S. Government's Watchlisting Process and Procedures as of September 2020 at 2 ("Watchlist Overview").  An individual can be placed on the watchlist if there is sufficient information supporting a "reasonable suspicion" that he or she is "a known or suspected terrorist."  Am.

---

[1] When resolving a motion to dismiss for lack of subject matter jurisdiction, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation omitted).  Accordingly, the Court draws this background from the amended complaint and, as needed, from the submitted declarations and exhibits.

Compl. ¶ 35; Watchlist Overview at 3–4.  While other agencies may nominate individuals for inclusion on the watchlist, the TSC has final authority to add or remove someone from the list. Am. Compl. ¶¶ 38–39.  Persons on the watchlist can be subject to screenings and delay at airports or border checkpoints, and their records may be consulted by other government entities during immigration and employment screenings.  See id. ¶ 47; Watchlist Overview at 5.  Listees can also be added to subcategories of the database like the Selectee List, which designates the individual for additional security screenings at borders and airports, or the No Fly List, which prohibits the individual from traveling on U.S. air carriers or through U.S. airspace.  Am. Compl. ¶¶ 43–47; Watchlist Overview at 2–5.

Listees are not informed when they are placed on the watchlist or the No Fly List.  Am. Compl. ¶ 48.  But travelers who believe they have been "unfairly or incorrectly delayed, denied boarding, or identified for additional screening or inspection at airports or U.S. ports of entry" may challenge their potential placement on the watchlist or No Fly List through DHS's Travelers Redress Inquiry Program ("DHS TRIP").  Watchlist Overview at 7–10.  The government will neither confirm nor deny a person's watchlist status, but U.S. citizens and lawful residents who submit a DHS TRIP inquiry are notified of their status on the No Fly List and provided an opportunity to request additional unclassified information and to submit materials to contest their listing.  Id. at 9; Am. Compl. ¶ 50.  The TSC reviews each DHS TRIP inquiry and has the authority to modify the applicant's placement on the watchlist or No Fly List.  Watchlist Overview at 8–9; Am. Compl. ¶¶ 50–52.  If the TSC determines that the applicant should remain on the No Fly List, however, the TSC prepares a recommendation for the TSA Administrator, who reviews the available material and issues a final order maintaining or removing the flight

restrictions.  Watchlist Overview at 9; Am. Compl. ¶ 53.  The TSA Administrator does not review applicants who are only listed on the terrorist watchlist.  Am. Compl. ¶¶ 51–55.

   B.  Factual Background

    Saad Bin Khalid is a U.S. citizen of Pakistani descent.  Am. Compl. ¶ 2.  In 2012, when he was 16 or 17 years old, he was subjected to additional screenings and delays during a trip from Pakistan to New York.   Am. Compl. ¶¶ 3, 67–76.  Khalid was ultimately permitted to travel to the United States, but was interviewed by FBI agents upon his arrival.  Id. ¶¶ 77–80.  In 2019, Khalid was not permitted to board a flight bound for the United States.  Id. ¶¶ 5, 81–84.  Suspecting he was on the No Fly List, Khalid submitted to further questioning by FBI agents at the U.S. consulate in Karachi and also filed a DHS TRIP application.  Id. ¶¶ 5, 85–94, 110.  A year later, Khalid received confirmation from DHS TRIP that he was indeed on the No Fly List.  Id. ¶ 111.  He then filed this suit in August 2021, claiming violations of his substantive and procedural due process rights, the Administrative Procedure Act ("APA"), and the Religious Freedom Restoration Act ("RFRA").  Compl.  Khalid remained in Pakistan with his wife and child until March 2022, Am. Compl. ¶¶ 2–5, when he was granted a one-time waiver to return to the United States via U.S. airspace, Defs.' Opp'n to Mot. Prelim. Inj. at 1.  Then-TSA Administrator David Pekoske later issued a Notice of Final Order and Decision which kept Khalid on the No Fly List.  Am. Compl. ¶¶ 140–142.  Defendants moved to dismiss Khalid's suit soon after.  Defs.' Mot. to Dismiss.

   In June 2022, with the Defendants' motion still pending, Khalid petitioned the government for a No Fly List waiver that would permit him to fly from the U.S. to Pakistan to attend the birth of his son.  Am. Compl. ¶ 148.  The government denied his request, but Khalid nevertheless traveled an alternative—albeit more costly and time-consuming—route that avoided

4

U.S. airspace.  Mot. Prelim. Inj. at 3.  Once in Pakistan, Khalid again sought a waiver to allow him to return directly to the United States.  Id. at 4.  After the government denied his request, Khalid moved the Court for a preliminary injunction to compel Defendants to permit him to again fly back to the U.S.  Id. at 1.  The Court denied the motion, finding that it likely lacked jurisdiction to modify the TSA Administrator's final order placing Khalid on the No Fly List and that Khalid had failed to demonstrate that he would be irreparably harmed if he were forced to journey home on an alternate route.  Order, Oct. 7, 2022.

Returning, then, to the pending motion to dismiss, Defendants reiterate that the Court lacks jurisdiction to alter the TSA Administrator's No Fly List order, which they say would be required to grant Khalid the relief he seeks.  Defendants further assert that the complaint fails to state a claim because Khalid has not pled how his inclusion on the No Fly List deprived him of any constitutionally protected liberty interest, denied him adequate due process, or infringed his exercise of religion.

## II.   Legal Standard

A motion under Rule 12(b)(1) "presents a threshold challenge to a court's jurisdiction[.]" Ctr. for Biological Diversity v. Jackson, 815 F. Supp. 2d 85, 89 (D.D.C. 2011) (citing Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  A plaintiff opposing such a motion "bears the burden of demonstrating the court's subject-matter jurisdiction over its claim by a preponderance of the evidence."  Marine Wholesale & Warehouse Co. v. United States, 315 F. Supp. 3d 498, 508 (D.D.C. 2018) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).  "When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the

facts alleged' and upon such facts determine jurisdictional questions." Id. at 509 (quoting Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).  The Court may consider "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" to determine if it has subject matter jurisdiction over the dispute.  Coal. for Underground Expansion, 333 F.3d at 198 (internal quotation omitted).

In analyzing a Rule 12(b)(6) motion, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  In deciding the motion, the Court "must take all of the factual allegations in the complaint as true[.]"  Id.  It must also "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006).  That said, "conclusory statements" and "[t]hreadbare recitals of the elements" do not suffice.  Ashcroft, 556 U.S. at 678.

## III.  Analysis

The Court will first address Khalid's challenge to his placement on the No Fly List before turning to his claims regarding his placement on the broader terrorist watchlist.

### A.  No Fly List

As explained in the order denying Khalid's motion for a preliminary injunction, 49 U.S.C. § 46110 places jurisdiction to challenge the TSA Administrator's final order affirming Khalid's placement on the No Fly List in the courts of appeals.  See Order, Oct. 7, 2023.  The circuit courts have "exclusive jurisdiction to affirm, amend, modify, or set aside" any order

issued by the Secretary of Transportation or the TSA Administrator relating to their security duties.  49 U.S.C. § 46110.  After Khalid sought redress for his placement on the No Fly List through the DHS TRIP process, his inclusion on the list was affirmed by a final order issued by the TSA Administrator.  Am. Compl. ¶ 140.  As a result, he must bring his challenges to that determination in either the D.C. Circuit or the court of appeals in the circuit where he resides. See 49 U.S.C. § 46110; Kashem v. Barr, 941 F.3d 358, 365, 390–91 (9th Cir. 2019) (interpreting § 46110 to grant the courts of appeals exclusive jurisdiction over substantive challenge to No Fly List determination affirmed by the TSA Administrator).

Khalid asserts that Section 46110's jurisdictional channeling provision does not apply because he challenges his initial placement on the No-Fly List, which was undertaken by the TSC, not the TSA. Opp'n to Mot. to Dismiss at 10.  Khalid points to Fikre v. FBI, where the Ninth Circuit held that the district court had jurisdiction over the plaintiff's challenge to his initial placement on the No Fly List because that decision was not made by the TSA.  35 F.4th 762, 773 (9th Cir. 2022).  But in Fikre, the plaintiff had already been removed from the No Fly List, so none of the relief sought would require altering a final order issued by the TSA Administrator.  Id. at 775.  Not so here.  Granting Khalid the relief he seeks—removal from the list—would necessarily alter the TSA Administrator's final order, which Section 46110 prevents this Court from doing.

Moreover, this Court lacks jurisdiction over any challenges that Khalid might bring to his inclusion on the No Fly List, including his initial placement, because it would be "inescapably intertwined" with a review of the TSA Administrator's order.  See Durso v. Napolitano, 795 F. Supp. 2d 63, 72 (D.D.C. 2011).  The inescapably intertwined doctrine "gives the courts of appeals jurisdiction over not only direct challenges to final agency orders but also any claims

7

inescapably intertwined with the review of those orders." Id. at 69–72 ("The [inescapably intertwined] doctrine serves to prevent plaintiffs from collaterally attacking agency proceedings by presenting ostensibly independent claims."). The doctrine applies where the court of appeals' review of the order would "allow for adjudication of the plaintiff's claims" and could "provide approximately the remedy that plaintiffs request." Id. Here, the courts of appeals have jurisdiction to review the procedures leading to and merits of the TSA Administrator's final order determining that Khalid should remain on the No Fly List, and they have the authority to remove Khalid from the list. Tr. of Oral Argument at 29–30, 33 (Oct. 5, 2022). Accordingly, each of Khalid's challenges to his inclusion on the No Fly List are "inescapably intertwined" with circuit review of the TSA Administrator's final order and must be decided by a circuit court. See Amerijet Int'l, Inc. v. U.S. Dep't of Homeland Sec., 43 F. Supp. 3d 4, 15 (D.D.C. 2014) (the inescapably intertwined doctrine prohibits "a district court from hearing 'as-applied challenges' in which the plaintiff seeks review of the procedures and merits of an order.").[2]

The Court need not determine if Section 46110 also grants the courts of appeals exclusive jurisdiction over the review of facial challenges to the No Fly List because the Court interprets Khalid's complaint as raising only as-applied challenges to his own placement on the watchlist and No Fly List. See, e.g., Am. Compl. at 39 (prayer for relief seeking remedies exclusive to Khalid). While Khalid describes facial challenges in his opposition to Defendants' motion to

---

[2] While the parties in Kashem agreed that "original jurisdiction over the plaintiffs' *procedural* due process claims lies in the district court," the Ninth Circuit did not decide that issue. 941 F.3d at 391 n.16 (emphasis in original). This Court disagrees that it has jurisdiction to analyze procedural challenges to a plaintiff's placement on the No Fly List once the TSA Administrator affirms that plaintiff's status on the list; such analysis would be "inescapably intertwined" with a challenge of the TSA's final order.

dismiss, Opp'n at 35–37, a plaintiff cannot amend his complaint through briefing. See Crowder

v. Bierman, Geesing, & Ward LLC, 713 F. Supp. 2d 6, 9 n.5 (D.D.C. 2010).

    B.  Terrorist Watchlist

Section 46110, however, does not bar challenges in district court to one's inclusion on the

broader terrorist watchlist. The TSC administers the TSDB watchlist and has final authority

regarding placement on the list, and the TSA Administrator does not issue a final order affirming

TSDB listings. Am. Compl. ¶¶ 38–39. Further, challenges to placement on the watchlist are not

inescapably intertwined with the TSA Administrator's final order affirming placement on the No

Fly List. Even if the TSA—or a circuit court upon judicial review—determines that an

individual should not be on the No Fly List, that determination would not necessarily invalidate

the subject's status on the watchlist, which is based on different criteria. See Watchlist

Overview at 4 ("Nominations to the No Fly or Selectee Lists (which are subsets of the TSDB)

must satisfy criteria distinct from that used for mere inclusion in the TSDB.").

As the Court reads Khalid's complaint, he challenges both his status on the watchlist and

the No Fly List. See, e.g., Am. Compl. ¶¶ 160–161, 167, 173. While many of the government's

arguments in its motion would also apply to Khalid's watchlist-related claims, the government

does not directly address those claims. As a result, the Court can rule on only some of Khalid's

claims related to the terrorist watchlist. Specifically, the Court will dismiss Khalid's due process

claims based on any right to travel and any potential Religious Freedom Restoration Act claim,

which are both legally deficient. The Court requires subsequent briefing from the parties,

however, to determine whether Khalid may proceed on his due process claim based on the

government-imposed stigma from placement on the watchlist and on his APA claim.

*1. Due Process Claims*

In support of his due process claims, Khalid alleges that his inclusion on the terrorist watchlist infringes his rights to travel and to be free from government-imposed stigma.  Am. Compl. ¶¶ 155–56, 159–61, 166.  For the most part, those arguments are unavailing.  To start, Khalid's placement on the broader terrorist watchlist alone does not subject him to flight restrictions.  See Watchlist Overview at 2.  Thus, regardless of whether there is a constitutionally protected right or liberty interest in air travel—a question the parties dispute—placement on the watchlist does not implicate it.  See Elhady v. Kable, 993 F.3d 208, 220-23 (4th Cir. 2021) (rejecting theory that presence on watchlist infringed any right to travel).

Whether Khalid's placement on the TSDB watchlist plausibly constitutes a due process violation under a "stigma-plus" theory is a closer question.  Although injuries to one's reputation alone do not implicate a protected liberty interest, reputational harm that also alters or extinguishes "a right or status previously recognized by state law" does implicate the protections of due process.  Paul v. Davis, 424 U.S. 693, 711–12 (1976).  In this circuit, Khalid may avail himself of two different legal theories to establish a due process violation based on reputational injury.  O'Donnell v. Barry, 148 F.3d 1126, 1139–40 (D.C. Cir.1998).  The first theory, known as "reputation-plus," requires "the conjunction of official defamation," id. at 1140, and the violation of a "right or status previously recognized by state law," id. at 1139 (quoting Davis, 424 U.S. at 711).  See also Jefferson v. Harris, 170 F. Supp. 3d 194, 204–06 (D.D.C. 2016); Garcia v. Pompeo, No. 18-cv-1822 (APM), 2020 WL 134865, at *6 (D.D.C. Jan. 13, 2020).  The second theory—which some courts refer to as "stigma-plus"—"differs from [the reputation-plus theory] in that it does not depend on official speech, but on a continuing stigma or disability arising from official action."  O'Donnell, 148 F.3d at 1140.  "In other words, where a reputation[-]plus theory

10

requires some form of defamatory or stigmatizing speech by the government, the latter depends only on governmental imposition of a continuing stigma or other disability arising from official action" that foreclosed the plaintiff from other recognized rights.  Garcia, 2020 WL 134865, at *6 (quoting Jefferson, 170 F. Supp. 3d at 205 (internal quotations omitted)).

Defendants do not address this distinction, but argue broadly that Khalid's due process claims must fail "because he has not alleged facts demonstrating public stigmatization."  Mot. at 23.  There is some support for that conclusion.  See Orange v. Dist. of Columbia, 59 F.3d 1267, 1274 (D.C. Cir. 1995) ("As we have held, injury to reputation cannot occur in the absence of public disclosure of the allegedly damaging statements."); Doe v. Cheney, 885 F.2d 898, 910 (D.C. Cir. 1989) ("NSA's actions do not, however, appear to be stigmatizing because NSA did not make public accusations that will damage Doe's standing and associations in the community.").  But Defendants do not confront how those cases square with the D.C. Circuit's later reading in O'Donnell, which appears to distinguish between "official speech" and "continuing stigma or disability arising from official action."  148 F.3d at 1140; see also Garcia, 2020 WL 134865, at *6 n.2 ("It is evident that Plaintiff eschews any reliance on a 'reputation plus' claim [and only proceeds on a stigma-plus theory], as he disavows the need to establish the critical element of public disclosure.").  Further, because the parties focused on the No Fly List during the initial briefing, they offer no substantive discussion of whether Khalid's assertion that his status on the watchlist results in "indefinitely delaying or denying immigration benefits" and lost employment opportunities would constitute a "plus factor" necessary for a stigma-plus claim.  Am. Compl. ¶¶ 63, 77–79, 108, 144.  Accordingly, Defendant's motion to dismiss as to Khalid's stigma-plus-based due process claims will be denied without prejudice.

    *2.   Administrative Procedure Act Claims*

Khalid also alleges that Defendants have "failed to provide a meaningful opportunity for [him] to contest his continued inclusion on the federal terrorist watchlist" and that Defendants' actions were "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law" in violation of the APA.  Am. Compl. ¶ 173.  Defendants retort that DHS TRIP and judicial review of the TSA Administrator's order in the courts of appeals provide Khalid with an adequate judicial remedy that would preclude an APA challenge.  Mot. at 34.  But even assuming that the procedure offered by Section 46110 does provide an adequate judicial remedy, it only does so for Khalid's challenges to the No Fly List, not his independent placement on the broader watchlist.  The parties do not address whether an adequate judicial remedy is available to address Khalid's TSDB-related claims.

On that question, the APA only permits judicial review of a "final agency action for which there is no other adequate remedy in a court."  See 5 U.S.C. § 704; Bowen v. Massachusetts, 487 U.S. 879, 903 (1988) (The APA does not "provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.").  But courts are instructed to "avoid lightly construing section 704 to defeat the APA's central purpose of providing a broad spectrum of judicial review of agency action." Citizens for Resp. & Ethics in Washington v. DOJ., 846 F.3d 1235, 1244 (D.C. Cir. 2017) (cleaned up) (quotation omitted).  Instead, courts look for clear and convincing evidence of legislative intent to create a special, alternative remedy to APA review of an agency decision. Id.; Garcia v. Vilsack, 563 F.3d 519, 523 (D.C. Cir. 2009).  For example, a statute that "affords an opportunity for *de novo* district-court review of the agency action" would preclude challenge

12

under the APA.  <u>Garcia</u>, 563 F.3d at 522–23 (internal quotation omitted).  An alternative to the APA need only be adequate, not identical. <u>See</u> <u>id.</u> at 522.

Defendants have not briefed what, if any, alternative adequate remedies are available to Khalid to challenge his placement on the watchlist.  Nor have the parties debated whether Khalid's existing suit challenging the constitutionality of his placement on the watchlist may constitute an adequate alternative remedy that precludes APA review.  Nor have they discussed whether his APA claim tracks so closely with his constitutional claim that it is effectively redundant.  <u>See</u> <u>Elhady</u>, 993 F.3d at 218 n.4 (following the district court's decision to interpret plaintiffs' APA challenge as rising and falling with their procedural due process claim).  Accordingly, the Court will deny without prejudice Defendants' motion to dismiss Khalid's APA claims related to his placement on the TSDB watchlist.

### 3.  *Religious Freedom Restoration Act Claim*

The Court does not read Khalid's amended complaint as alleging that his placement on the watchlist alone violates the Religious Freedom Restoration Act.  Am. Compl. ¶¶ 176–79.  Nor could it.  As explained, inclusion in the TSDB does not prevent Khalid from traveling and therefore would not substantially burden his ability to make a pilgrimage to Mecca, which is the main basis for his RFRA claim concerning the No Fly List.  <u>See</u> <u>Id.</u>

## IV.  Conclusion

For these reasons, it is hereby

**ORDERED** that [19] Defendants' Motion to Dismiss is GRANTED in part, and DENIED in part without prejudice.  Khalid's claims challenging his placement on the No Fly List are dismissed with prejudice for lack of subject matter jurisdiction because the courts of appeals have exclusive jurisdiction over those claims.  Khalid's claims regarding his placement

on the terrorist watchlist are permitted to continue subject to further briefing as to whether he has adequately pled a due process violation based on government-imposed stigma and whether he may proceed under the APA.  Plaintiff shall notify Defendants by March 31, 2023 if he intends to proceed with the case in light of this ruling.  Should Plaintiff choose to press on, the government shall file any renewed motion to dismiss within 45 days of Plaintiff's notification. Khalid's other TSDB-related claims are dismissed.

      **SO ORDERED**.

_____

CHRISTOPHER R. COOPER
United States District Judge

Date: <u>March 16, 2023</u>